```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA **Plaintiff** v. JOSE DAMIAN GARCIA-DUARTE **Defendant** | CRIMINAL NO. 22-500 (RAM) |

### MEMORANDUM AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Jose Damian Garcia-Duarte's ("Defendant" or "Mr. Garcia-Duarte") *Motion to Dismiss*. (Docket No. 45). Mr. Garcia-Duarte is charged with one count of re-entry of removed alien in violation of 8 U.S.C. § 1326(a). In his *Motion to Dismiss*, Mr. Garcia-Duarte challenges the indictment on two grounds: (1) he claims an element of the offense is missing because he did not need to reapply for admission after ten years; and (2) the initial order of removal was invalid because he did not receive adequate notice, thereby violating his due process rights. For the following reasons, Defendant's *Motion to Dismiss* is **DENIED**.

### I. FACTS AND BACKGROUND

The following factual recitation is taken from the Affidavit in Support of Criminal Complaint and the Indictment. (Docket Nos.

1-1 and 8). *See* United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) ("When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true").

On December 19, 1982, Mr. Garcia-Duarte illegally entered the United States through Aguadilla, Puerto Rico. (Docket No. 1-1 ¶ 7). On February 11, 2008, Defendant was encountered by an officer of the Puerto Rico Police Bureau during a traffic stop and was referred to Immigration and Customs Enforcement. Id. On April 1, 2009, Defendant was ordered removed by an Immigration Judge. Id. ¶ 8. Mr. Garcia-Duarte was apprehended on April 1, 2010 and was officially, and physically, removed from the United States to the Dominican Republic on September 22, 2010. Id.

On November 11, 2022, United States Border Patrol Ramey Sector Dispatch in Aguadilla, Puerto Rico, received reports of a twenty-foot vessel that was attempting to make landfall near "Cerro Gordo" beach in Vega Alta, Puerto Rico. Id. ¶ 3. It was reported that a total of fifty-two subjects were initially onboard the vessel, that twenty-six individuals were unaccounted for, and that the United States Coast Guard was able to rescue nineteen people. Id. Five subjects were initially arrested, including Mr. Garcia-Duarte. Id. ¶ 4. Upon being questioned by an immigration officer, Defendant acknowledged that he was an undocumented migrant from the Dominican Republic without valid immigration documents to enter, be in, or remain in the United States legally. Id. ¶ 5.

On November 17, 2022, Defendant was charged with one count of re-entry of removed alien in violation of 8 U.S.C. § 1326(a). The Indictment alleges that Defendant:

> [W]ho is an alien, as the term is defined in [8 U.S.C. § 1101(a)(3)] and who has been previously removed from the United States, was found in the United States without obtaining, prior to is re-embarkation at a place outside the United States, the express consent of the Secretary of the Department of Homeland Security to reapply for admission into the United States.

(Docket No. 8 at 1).

## II. APPLICABLE LAW

The Constitution of the United States requires that, "[i]n all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." U.S. Const. amend VI. To protect that right, the Federal Rules of Criminal Procedure state that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1).

Importantly, however, the government need not recite all of its evidence in the indictment. A sufficient indictment need only "sketch[] out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011). "Unlike a civil complaint that need allege facts that plausibly narrate a claim

for relief, a criminal indictment need only apprise the defendant of the charged offense, so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Rodríguez-Rivera, 918 F.3d 32, 34 (1st Cir. 2019) (citations and internal quotation marks omitted). Therefore, "an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018) (citations omitted). The First Circuit has noted that "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations[.]" Guerrier, 669 F.3d at 4.

### III. ANALYSIS

**A. The Indictment Adequately Alleges the Elements of the Charge**

Pursuant to 8 U.S.C. 1326(a):

> [A]ny alien who—
>
> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall

>    establish that he was not required to obtain
>    such advance consent under this chapter or any
>    prior Act,
>
>    shall be fined under Title 18, or imprisoned
>    not more than 2 years, or both.

Id.

Accordingly, to adequately charge an individual with violating 8 U.S.C. § 1326(a), the Government must allege the following four elements: (1) that the defendant was an alien at the time of the alleged offense; (2) that they had previously been arrested and deported; (3) that they attempted to enter the United States; (4) that they had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of their previous arrest and deportation. United States v. Cabral, 252 F.3d 520, 522-23 (1st Cir. 2001).

Defendant asserts that per § 1326(a)(2)(B) and First Circuit precedent, there are instances in which the consent of the Attorney General is not required prior to reentry. *See* United States v. DeLeon, 444 F.3d 41, 44 (1st Cir. 2006) ("It is a crime for an alien to re-enter the country after he has been deported, unless he has the express permission of the Attorney General of the United States (or unless such permission is unnecessary in his case for other reasons")). Mr. Garcia-Duarte contends that he did not need the consent of the Attorney General before attempting to re-enter

the United States because "he remained outside of the United States for more than the statutorily required term of ten (10) consecutive years since the date of deportation or removal[.]". (Docket No. 45 ¶ 16).[1]

Defendant's claim that the Government cannot establish the fourth element of § 1326(a) challenges the sufficiency of the evidence rather than the sufficiency of the indictment. A motion to dismiss the indictment "does not 'provide an occasion to force the government to defend the sufficiency of its evidence to be marshalled in support of proving the charged offense.'" United States v. Keleher, 505 F. Supp. 3d 41, 46 (D.P.R. 2020) (citing Rodríguez-Rivera, 918 F.3d at 35). "At the indictment stage, the government need not 'show,' but merely allege, the required elements." Id. (quoting United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014)). In the case at bar, the indictment sufficiently alleges the four elements of § 1326(a). Therefore, Defendant's request for dismissal on this ground is improper and **DENIED.**

---

[1] To support his claim, Defendant points to Form I-212, the United States Citizenship and Immigration Services' form to apply for permission to reapply for admission into the United States after deportation or removal, and 8 U.S.C. § 1182(a)(9)(B)(i), which provides that "[a]ny alien (other than an alien lawfully admitted for permanent residence who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible." While the language in Form I-212 and § 1182 prohibits applications for readmission **within** the 10-year period following departure or removal, Defendant has not, and cannot, cite to any supporting authority that states that the consent of the Attorney General is not required **after** said 10-year prohibition has elapsed. See L. CV. R. 7(a) and L. CR. R. 112; see also United States v. Romero-Caspeta, 744 F.3d 405, 408 (6th Cir. 2014) ("§ 1182 does not impose a limit on § 1326").

### B. The Indictment Adequately Alleges the Elements of the Charge

Pursuant to 8 U.S.C. § 1326(d), in criminal proceedings under § 1326:

> [A]n alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

Id.

Given "the presumption of regularity that attaches to a final deportation order[,]" the burden of proof in a collateral attack on an underlying deportation order is on the defendant. United States v. Lopez-Rodriguez, 2017 WL 4081898, at *3 (D.P.R. 2017) (quoting United States v. Arevalo-Tavares, 210 F.3d 1198, 1200 (10th Cir. 2000); United States v. Arita-Campos, 607 F.3d 487, 490 (7th Cir. 2010)). Importantly, because the three elements outlined in § 1326(d) "are in the conjunctive . . . a defendant must satisfy all of them to successfully attack his removal order." United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006), *see also*

United States v. Palomar-Santiago, 593 U.S. 321, 329 (2021) (holding that "each of the statutory requirements of § 1326(d) is mandatory").

Mr. Garcia-Duarte claims that the April 1, 2009 order of removal against him is invalid because he was not notified of the order and thus his due process rights were violated. (Docket No. 45 ¶¶ 22-24). Defendant concedes that he did not file an appeal or otherwise exhaust any administrative remedies. Id. ¶ 27. Generally, "[t]o satisfy the exhaustion prong of § 1326, an alien must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." Arita-Campos, 607 F.3d at 491. However, Defendant contends that he failed to do so because he did not receive notice of the deportation order. (Docket No. 45 ¶¶ 27-28). A removal order entered in absentia, as Defendant alleges here, "may be rescinded upon a **motion to reopen filed at any time** if the alien demonstrates that he or she did not receive notice" in accordance with applicable regulations. 8 C.F.R. § 1003.23(b)(4)(ii) (emphasis added). In other words, Mr. Garcia-Duarte could have filed a motion to reopen his case at any time, thereby exhausting administrative remedies, and failed to do so.[2]

---

[2] The Court notes that the Government argues that the discovery provided reflects that Defendant absconded from immigration proceedings. (Docket No. 53 at 6). The Government further alleges that Defendant signed the Department of Homeland Security's Warning to Alien Ordered Removed or Deported form dated April 21, 2009. Id. Based on the limited record before the Court, a determination of

Defendant does not cite to any cases or authorities to support the claim that he did not have to file a motion to reopen upon becoming aware of the order of removal. *See* L. CV. R. 7(a) and L. CR. R. 112. Furthermore, even if failure to exhaust was excusable under the present circumstances, Defendant did not substantively address the other two elements (*i.e.*, that he was deprived of judicial review and that the order was fundamentally unfair), and thereby failed to meet his burden under 8 U.S.C. § 1326(d).

## IV.  CONCLUSION

For the reasons set forth herein, Defendant's *Motion to Dismiss at* Docket No. 45 is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of June 2024.

S/RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE

---

whether Mr. Garcia-Duarte actually signed the form cannot be made at this juncture. Notably, Defendant has not contested these allegations. However, per his version of the events, he was unaware of the removal order and was apprehended upon arriving to an Immigration Office in San Patricio in Guaynabo, Puerto Rico to request a Citizenship and Immigration Services stamp on his passport. (Docket Nos. 45 ¶ 10 and 46-10 at 3).